FILED

2024 Aug-02  AM 11:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM MCCOLLUM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:22-cv-1513-AMM** |
| | ) | |
| **AT&T SERVICES, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

This case is before the court on cross-motions for summary judgment filed by defendants AT&T Services, Inc. ("AT&T Services") and AT&T Umbrella Benefit Plan No. 3 (the "Plan") (collectively, the "AT&T Defendants"), and plaintiff William McCollum. Docs. 19 & 20. For the reasons explained below, the court **GRANTS** the motion for summary judgment filed by the AT&T Defendants and **DENIES** the motion for summary judgment filed by Mr. McCollum.

## I.      BACKGROUND

Facts set forth in the parties' statement of material undisputed facts are deemed admitted for summary judgment purposes unless controverted by the response or reply of the opposing party. These are the undisputed material facts and any disputes of those facts:

A.    The Plan

AT&T Services is the Plan Administrator of the Plan. Doc. 18-1 at 58. The

Plan includes the AT&T Disability Income Program (the "Program"), which

provides both short-term disability ("STD") and long-term disability ("LTD")

benefits. Doc. 18-1 at 17. "The Program is funded by a trust," and "[n]o benefits

provided under the Program are provided by insurance." *Id.* at 59.

For purposes of STD benefits, the Plan provides, "You are considered Totally

Disabled when, because of illness or injury, you are unable to perform all of the

essential functions of your job or another available job assigned by your

Participating Company with the same full-time or part-time classification for which

you are qualified." *Id.* at 18 (cleaned up). The Plan further provides that to receive

STD benefits, a participant must provide "satisfactory Medical Evidence" of

disability from the participant's physician. *Id.* at 22. The Plan defines "Medical

Evidence" as follows:

> Objective medical information sufficient to show that the
> Participant is Disabled, as determined at the sole discretion
> of the Claims Administrator. Objective medical
> information includes, but is not limited to, results from
> diagnostic tools and examinations performed in
> accordance with the generally accepted principles of the
> health care profession. In general, a diagnosis that is based
> largely or entirely on self-reported symptoms will not be
> considered sufficient to support a finding of Disability. For
> example, reports of intense pain, standing alone, will be
> unlikely to support a finding of Disability, but reports of
> intense pain associated with an observable medical

2

> condition that typically produces intense pain could be
> sufficient.

*Id.* at 71. The Plan also requires the person seeking benefits to "provide Medical Evidence or other information reasonably required by the Claims Administrator." *Id.* at 16.

The Claims Administrator for the Plan is the AT&T Integrated Disability Service Center, which is administered by Sedgwick Claims Management Services, Inc. ("Sedgwick"). *Id.* at 63; Doc. 18-8 at 14; Doc. 18-4 at 1. As the Plan Administrator, AT&T Services delegated to Sedgwick "the complete discretionary fiduciary responsibility for all disability determinations." Doc. 18-1 at 58. Sedgwick has "sole discretion to interpret the Program, including, but not limited to, interpretation of the terms of the Program, determinations of coverage and eligibility for benefits, and determination of all relevant factual matters." *Id.*

### B.   Mr. McCollum's Claim for Benefits

Mr. McCollum is a former employee of AT&T Services and was a Plan participant. Doc. 18-3 at 1–2. Mr. McCollum worked for AT&T Services for over thirty-four years until he filed for disability with an onset date of July 13, 2020. Doc. 18-3 at 3, 10.

On July 13, 2020, Mr. McCollum was admitted to Grandview Medical Center due to risk of suicide, debilitating anxiety, and debilitating depression. *See* Doc. 18-

3

10 at 3–21. He was discharged on July 17 to continue treatment with an outpatient psychiatrist. *See id.*

After his discharge, Mr. McCollum followed up with Dr. Shawn Harvey. Doc. 18-4 at 8. Mr. McCollum also enrolled in a six-week intensive outpatient program to "learn[ ] coping skills to manage his depression and anxiety." Doc. 18-9 at 24.

After he was discharged from the intensive outpatient program on October 9, Mr. McCollum filed for STD benefits. *Id.*; Doc. 18-8 at 19. His claim was approved from July 20 to October 20, but was thereafter denied. Doc. 18-8 at 19. In the denial letter, the AT&T Defendants stated that they "would need clear medical evidence from your current treating provider(s) of why you are not able to perform the essential duties of your occupation." *Id.* at 65. Further, "[y]our treating provider(s) would need to document your functional impairments as they relate to your diagnosis and provide a treatment plan that addresses plans for your return to work with or without reasonable restrictions with a reasonable duration." *Id.*

On November 20, Dr. Harvey wrote a letter that explained that Mr. McCollum "is diagnosed with Major Depression, Generalized Anxiety Disorder, and chronic pain." *Id.* at 63. After listing Mr. McCollum's medications, Dr. Harvey stated that in his "professional opinion," Mr. McCollum "cannot maintain gainful employment due to his conditions that [are] permanent and chronic." *Id.* During a phone call that took place on December 1, the AT&T Defendants explained to Mr. McCollum that

the paperwork they had received from him did "not have any exam[] findings supporting how [he] is unable to work." Doc. 18-6 at 15.

On December 7, Mr. McCollum appealed the denial of STD benefits. Doc. 18-8 at 57–58. Sedgwick handled the administrative appeal of the STD denial, *see* Docs. 18-3 to 18-10. Dr. Elana Dlugach, a board-certified psychiatrist, conducted the review of Mr. McCollum's administrative record. Doc. 18-8 at 25–30. Based on the record, she concluded that after Mr. McCollum's discharge from the intensive outpatient program, "[t]here is no suicidal or homicidal ideation or psychotic symptoms, no cognitive impairment except for some difficulty focusing noted in the last note provided, and there is no difficulty with activities of daily living (ADL's) described." *Id.* at 29. She further concluded that "[t]here is no clear indication that there are functional impairments during the period of review." *Id.* And according to Dr. Dlugach, although Mr. McCollum "complain[ed] of anxiety, panic and depressed mood, these findings by themselves are not clinically significant without documented functional impairment." *Id.* Dr. Dlugach also reported that she tried to call Dr. Harvey twice, that she left voice messages on both occasions requesting a return call, and that she never received a return call. *See id.* at 27. Sedgwick issued a final letter of denial of STD benefits on February 9, 2021. *Id.* at 14–18.

After Mr. McCollum's STD claim was denied, he applied for LTD benefits. Doc. 18-11 at 5. Sedgwick denied Mr. McCollum's LTD claim on December 14, 2021 because he had not exhausted his STD benefits. *Id.* at 18–20.

## C.   Procedural History

Mr. McCollum filed this lawsuit in November 2022, asserting one claim for wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). Doc. 1 ¶¶ 46–48. The AT&T Defendants, Doc. 19, and Mr. McCollum, Doc. 20, filed motions for summary judgment in September 2023. The motions are fully briefed. Docs. 21–23.

## II.   LEGAL STANDARDS

This case requires the court "to determine whether a reasonable basis existed for the ERISA plan administrator's benefits decisions." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011). "Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Id.* "Whether the administrator's decision was either *de novo* correct or reasonable under this Circuit's *Williams*[1] framework is a question of law." *Id.*

---

[1] In *Blankenship*, the Eleventh Circuit acknowledged that the framework from *Williams v. BellSouth Telecommunications Inc.*, 373 F.3d 1132 (11th Cir. 2004), had been modified in part based on guidance from the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 128 (2008). 644 F.3d at 1354–55. Because the Eleventh Circuit continues to style the test as the "*Williams*

For a court reviewing a plan administrator's benefits decision, the present *Williams* test goes this way:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355.

---

framework," *Blankenship*, 644 F.3d at 1354, or "*Williams* test," *Melech v. Life Insurance Co. of North America*, 739 F.3d 663, 672 (11th Cir. 2014), this court will do the same.

## III.   ANALYSIS

### A.   The AT&T Defendants' Motion for Summary Judgment

The AT&T Defendants argue that they are entitled to summary judgment on Mr. McCollum's sole claim of wrongful denial of disability benefits under ERISA. Doc. 19-1 at 1.

#### 1.   The Administrator's Decision To Deny STD Benefits Was Not Wrong

The AT&T Defendants first argue that the decision to deny benefits was not wrong under a *de novo* standard of review. *See* Doc. 19-1 at 8. The AT&T Defendants contend that the board-certified psychiatrist retained by Sedgwick concluded that "[t]here is no suicidal or homicidal ideation or psychotic symptoms, no cognitive impairment except for some difficulty focusing noted in the last note provided, and there is no difficulty with activities of daily living (ADL's) described." *Id.* at 7 (cleaned up). She further concluded that "[t]here is no clear indication that there are functional impairments during the period of review." *Id.* (cleaned up). And according to Dr. Dlugach, although Mr. McCollum "complain[ed] of anxiety, panic and depressed mood, these findings by themselves are not clinically significant without documented functional impairment." *Id.* (cleaned up).

According to the AT&T Defendants, Mr. McCollum failed to provide satisfactory medical evidence of his disability to support his claim for STD benefits. *See* Doc. 19-1 at 7–8. AT&T asserts that Sedgwick reached out to Dr. Harvey "and

provided him instructions as to what type of information it was looking for to determine Mr. McCollum's disability status." *Id.* at 8. Additionally, the AT&T Defendants contend that Sedgwick directly explained what it required from Mr. McCollum in its initial denial letter, Doc. 18-8 at 65, and in a later telephone conversation, Doc. 18-6 at 15. Doc. 19-1 at 8. Further, the AT&T Defendants assert that Dr. Dlugach called Dr. Harvey twice, that she left voice messages on both occasions requesting a return call, and that she never received a return call. *Id.* According to the AT&T Defendants, all that Sedgwick received was Dr. Harvey's "letter of November 20, 2020, containing an unsupported opinion that Mr. McCollum 'cannot maintain gainful employment due to his conditions that is (sic.) permanent and chronic.'" *Id.* at 8 (quoting Doc. 18-8 at 63). On those bases, the AT&T Defendants argue that this court cannot determine that its benefits-denial decision was wrong. *Id.* at 5, 8.

Mr. McCollum responds that the AT&T Defendants' determination was wrong for three reasons. First, he argues that the AT&T Defendants relied on an incorrect description of his job: "sit[,] talk[,] type." Doc. 18-3 at 2; *see also* Doc. 21 at 2. Mr. McCollum contends that his actual job description "involved far more than the ability to 'sit, talk, type.'" Doc. 21 at 2; *see id.* at 2–5. Mr. McCollum alleges that the AT&T Defendants "never identified or reviewed" his "appropriate job description." *Id.* at 5. Second, Mr. McCollum argues that "[t]he medical evidence of

9

record squarely called into question [his] ability to sustain even sedentary, unskilled work activities on a regular and continuing basis." *Id.* at 7. Third, Mr. McCollum disagrees with the AT&T Defendants' contention that he failed to provide "satisfactory Medical Evidence." *Id.* According to Mr. McCollum, his "treating physicians[] completed forms, wrote supportive opinions and provided examination findings performed in accordance with generally accepted principles," and the Plan did not require that his "treating physician interrupt his treatment of patients to take phone calls from non-examining doctors retained by insurance companies to critique treatment notes, opinion letters and care plans." *Id.* at 8.

On reply, the AT&T Defendants argue that Mr. McCollum's point about the job description misses the mark because it concerns Sedgwick's interim decision and not the final decision to deny STD benefits. *See* Doc. 23 at 3. According to the AT&T Defendants, "[b]efore Sedgwick made its final decision, the job description was reviewed, both by Sedgwick and its physician reviewer." *Id.* The AT&T Defendants contend that "Dr. Dlugach is the only doctor to have reviewed [Mr. McCollum's] job description." *Id.*

The Claims Administrator (Sedgwick) correctly determined that Mr. McCollum was not disabled under the terms of the Plan. Dr. Dlugach concluded that Mr. McCollum was not disabled, and she explained her rationale for that belief. *See* Doc. 18-8 at 25–30. According to Dr. Dlugach, Mr. McCollum's records showed that

he did not have suicidal ideation, homicidal ideation, or psychotic symptoms. *Id.* at 29. Dr. Dlugach found that Mr. McCollum suffered from limited cognitive impairment, and that he had no difficulty with activities of daily living. *See id.* Most importantly, she found that "[t]here is no clear indication that there are functional impairments during the period of review." *Id.* Dr. Dlugach accepted that Mr. McCollum "complain[ed] of anxiety, panic[,] and depressed mood," but found that those findings alone "are not clinically significant without documented functional impairment," which was absent from the record. *Id.*

Dr. Dlugach's findings make clear that she had an accurate understanding of Mr. McCollum's job description. She stated that "[p]er the job description of Senior Network Design Engineer, responsibilities include working with labs, product development, engineering teams, coordinating and interfacing with internal and external customers." *Id.* That description is remarkably different from the "sit, talk, type" description Mr. McCollum argued that the AT&T Defendants employed.

Further, despite multiple attempts to inquire further on the part of Sedgwick, Dr. Harvey did not provide any explanation as to why Mr. McCollum's diagnoses would inhibit or prohibit him from fulfilling any of the duties of his job. *See* Doc. 18-6 at 15; Doc. 18-8 at 27. Indeed, the record does not indicate whether Dr. Harvey ever reviewed Mr. McCollum's job description.

In the light of this administrative record, Sedgwick was correct to deny STD benefits under the terms of the Plan. To hold otherwise, the court would need to credit the conclusory opinion of Dr. Harvey over the opinion of Dr. Dlugach solely because Dr. Harvey was Mr. McCollum's treating physician. But the Supreme Court has firmly rejected that proposition; in the context of ERISA benefits denial claims, the Court held that "[n]othing . . . suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003).

### 2.   Even If the STD Benefits-Denial Decision Was Not Correct, It Was At Least Reasonable

Under the *Williams* framework, the inquiry could end at step one because the benefits denial decision was not wrong. But, even if the benefits denial decision had been wrong, the court would not disturb the decision because it was at least reasonable. To reach the question of whether the denial of benefits was reasonable (step three), the court must first determine whether Sedgwick "was vested with discretion in reviewing claims" (step two). *Blankenship*, 644 F.3d at 1355. To proceed to review under the arbitrary and capricious standard that step three requires, the Plan must "*expressly* provide[] the administrator discretionary authority to make

12

eligibility determinations or to construe the plan's terms." *Kirwan v. Marriott Corp.*, 10 F.3d 784, 788 (11th Cir. 1994). The Plan provides such discretionary authority:

> [t]he Claims Administrator has been delegated the complete discretionary fiduciary responsibility for all disability determinations by the Plan Administrator to determine whether a particular Eligible Employee who has filed a claim for benefits is entitled to benefits under the Program, to determine whether a claim was properly decided, and to conclusively interpret the terms and provisions of the Program.

Doc. 18-1 at 58. And Mr. McCollum does not argue that the Plan failed to provide Sedgwick with the type of discretionary authority that triggers arbitrary and capricious review. *See* Doc. 21 at 8. Therefore, the court will review the benefits denial decision for reasonability, or under the arbitrary and capricious standard.

"In applying the arbitrary and capricious standard, this Court's role is limited to determining whether [Sedgwick's] interpretation was made rationally and in good faith[—]not whether it was right." *Guy v. Se. Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989) (cleaned up). Put differently, Sedgwick's "interpretation of the intent or meaning of the provisions of the . . . Plan[] need not be the best possible decision, only one with a rational justification." *Griffis v. Delta Fam.-Care Disability*, 723 F.2d 822, 825 (11th Cir. 1984).

The AT&T Defendants argue that a reasonable basis existed to support the benefits denial decision: "the independent medical review that Sedgwick obtained from Dr. . . . Dlugach." Doc. 19-1 at 12. According to the AT&T Defendants, even

if Dr. Dlugach had an opinion that differed from the opinion held by Dr. Harvey, "a benefit plan is not arbitrary and capricious if it gives greater weight to the opinion of a[n] independent doctor that it retained." *Id.* at 12–13.

The AT&T Defendants cite binding precedent in support of their argument. *Id.* at 13; *see Nord*, 538 U.S. at 834 ("[W]e hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."); *Blankenship*, 644 F.3d at 1356 ("Even where [the plaintiff's] own doctors offered different medical opinions than [the plan administrator's] independent doctors, the plan administrator may give different weight to those opinions without acting arbitrarily and capriciously."); *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1279–80 (11th Cir. 2005) ("Giving more weight to the opinions of some experts than to the opinions of other experts is not an arbitrary or capricious practice.").

Mr. McCollum argues that the AT&T Defendants based their denial of benefits "entirely on the opinion of a non-examining reviewer who provided absolutely no basis for her findings that Mr. McCollum had no functional limitations." Doc. 21 at 9 (cleaned up). He further contends that Dr. Dlugach "offered absolutely no support for her findings that Mr. McCollum has no functional limitations" and that her

14

opinion "contains none of the 'medical evidence' they require of Mr. McCollum to support the outlandish findings of [their] retained reviewer." *Id.* According to Mr. McCollum, the benefits denial decision "was arbitrary and capricious because there was no 'reasonable basis for the decision.'" *Id.* at 10 (quoting *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989)).

The AT&T Defendants reply that the administrative record shows that "Mr. McCollum had suffered from depression and anxiety for 22 years before his hospitalization in July of 2020." Doc. 23 at 2 (citing Doc. 18-8 at 28). The AT&T Defendants argue that until July 2020, "there is nothing in the administrative record to suggest that he had been doing anything other than performing his job, while at the same time suffering from depression and anxiety." *Id.* Further, the AT&T Defendants contend that nothing in the administrative record "suggest[s] that his condition had done anything other than improve following his admission to the hospital." *Id.* Therefore, the AT&T Defendants reason that "it was not arbitrary and capricious for Sedgwick to have concluded, based on the opinion of a psychiatrist, that Mr. McCollum's condition had returned to the *status quo ante*." *Id.* (cleaned up).

Sedgwick's decision was not arbitrary and capricious. Sedgwick determined, based on the opinion of Dr. Dlugach, that nothing in the administrative record established that Mr. McCollum was experiencing "suicidal or homicidal ideation," "psychotic symptoms," or "functional impairments" that would render him disabled

for purposes of the Plan. Doc. 18-8 at 29. Mr. McCollum's argument that Dr. Dlugach did not support her findings runs contrary to the language of the Plan. Under the terms of the Plan, Mr. McCollum, not Dr. Dlugach, had the burden to "provide Medical Evidence or other information reasonably required by the Claims Administrator" in support of his claim. Doc. 18-1 at 16. The Plan did not require Sedgwick or Dr. Dlugach to prove that Mr. McCollum lacked a disability to deny STD benefits. Accordingly, Sedgwick's decision to rely on Dr. Dlugach's opinion over Dr. Harvey's opinion was at least reasonable—or in other words, it was not arbitrary and capricious. *See Nord*, 538 U.S. at 834; *Blankenship*, 644 F.3d at 1356.

### 3. Because the Plan Is Funded Through a Trust, No Conflict of Interest Exists

Because Sedgwick relied on reasonable grounds in its benefits denial decision, the court must determine whether the Plan "operated under a conflict of interest" (step four). *Blankenship*, 644 F.3d at 1355. In the Eleventh Circuit, the "law is clear that no conflict of interest exists where benefits are paid from a trust that is funded through periodic contributions so that the provider incurs no immediate expense as a result of paying benefits." *Gilley v. Monsanto Co.*, 490 F.3d 848, 856 (11th Cir. 2007). It is "[o]nly when benefits are paid from a provider's assets, so that benefit decisions have a direct and immediate impact on the provider's profit margin" that "the heightened standard come[s] into play." *Id.* at 857.

16

The AT&T Defendants argue that no conflict of interest exists in this case because "the benefits at issue are paid from a trust established by the AT&T companies that participate in the plan." Doc. 19-1 at 13–14 (citing Doc. 18-1 at 59). According to the AT&T Defendants, "Sedgwick has the discretionary authority to decide claims, and unlike an insurance company whose decisions affect its own assets, [Sedgwick] is only deciding whether a trust shall be tapped to pay a benefit claim." *Id.* at 15. Mr. McCollum offers no argument in opposition. *See* Doc 21.

Because the benefits in this case come from a trust, and not directly from the AT&T Defendants' assets, no conflict of interest exists in this case.

### 4.    Mr. McCollum's LTD Claim Is Premature

The AT&T Defendants additionally seek summary judgment regarding the LTD benefits denial decision. Doc. 19-1 at 16. According to the AT&T Defendants, "[t]he Plan requires a participant to exhaust a 26-week waiting period during which he receives STD benefits[] before being eligible for LTD benefits." *Id.*; *see* Doc. 18-1 at 30. The AT&T Defendants argue that "[b]ecause Mr. McCollum has not received STD benefits for 26 weeks, he is not eligible for LTD benefits." *Id.*

Mr. McCollum responds that the AT&T "Defendants boxed [him] into a no-win situation" with respect to LTD benefits. Doc. 21 at 10. He argues that the AT&T "Defendants failed to properly review the supportive evidence provided with Mr.

McCollum's LTD application and appeal and instead simply based the denial of LTD on their sham denial of STD benefits." *Id.* at 11.

The AT&T Defendants reply that if the court were to "rule in Mr. McCollum's favor on his claim for short-term disability benefits, he will have exhausted his short-term disability benefits and be eligible for long-term disability benefit consideration." Doc. 23 at 3. Therefore, the AT&T Defendants argue that "Sedgwick was not arbitrary and capricious in the way it handled the long-term disability claim." *Id.* at 4.

Based on the court's review of the Plan, Sedgwick's decision to deny LTD benefits was reasonable. Sedgwick's decision comports with the plain language of the plan, which provides that LTD "benefits will begin on the first day immediately following your 26 weeks of [STD] benefits." Doc. 18-1 at 30 (cleaned up). Because Mr. McCollum did not receive 26 weeks of STD benefits, he was not eligible to receive LTD benefits. The fact that Sedgwick did not perform an additional review of the same administrative record to make a benefits decision regarding LTD does not render that decision arbitrary and capricious.

For the foregoing reasons, the court **GRANTS** summary judgment in favor of the AT&T Defendants.

**B.      Mr. McCollum's Motion for Summary Judgment**

Because the court granted summary judgment in favor of the AT&T Defendants on Mr. McCollum's sole claim and finds that the AT&T Defendants are entitled to judgment on that claim as a matter of law, the court **DENIES** Mr. McCollum's motion for summary judgment.

**IV.      CONCLUSION**

The motion for summary judgment filed by the AT&T Defendants is **GRANTED**. The motion for summary judgment filed by Mr. McCollum is **DENIED**. The Clerk of Court is **DIRECTED** to close the case.

**DONE** and **ORDERED** this 2nd day of August, 2024.



**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE